UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| DONALD PERKINS<br>               Plaintiff,<br>v.<br><br>BORGWARNER MORSE TEC, INC., AS<br>A SUCCESSOR IN INTEREST TO<br>BORG WARNER CORPORATION, ET<br>AL<br>               Defendants. | CIVIL ACTION NO.<br>3:16-cv-00738 (JAM)<br><br><br><br><br><br>MARCH 10, 2017 |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF TMS INTERNATIONAL CORPORATION F/K/A TUBE CITY IMS CORPORATION INCORRECTLY SUED AS THE SUCCESSOR-IN-INTEREST TO WHITE MOTOR CORPORATION**

Pursuant to Fed. R. Civ. P. 56, TMS International Corporation f/k/a Tube City IMS Corporation, incorrectly sued as the successor-in-interest to White Motor Corporation, (hereinafter referred to as "TMS International") respectfully submits this Memorandum of Law and corresponding documentation in support of its Motion for Summary Judgment.

### I.    INTRODUCTION:

TMS International moves for summary judgment with respect to plaintiff's April 18, 2016 First Amended Complaint, any Cross-Claims by any co-defendants directed to it, and any Intervening Complaints by any Intervening Plaintiffs directed to it, on the grounds that product liability cannot be imputed to TMS International, in view of the United States Bankruptcy Court for the Northern District of Ohio's November, 1983 confirmation of White Motor Corporation's Plan of Reorganization (hereinafter referred to as "Plan of Reorganization") under

Chapter 11 of the U.S. Bankruptcy Code.  The Order confirming the Plan of Reorganization discharged all of White Motor Corporation's pre-confirmation liabilities, and bars claims for post-confirmation liabilities against its successors.

As set forth in more detail below, plaintiff Donald Perkins (hereinafter referred to as "Perkins") claims he was exposed to asbestos as a consequence of his employment as a truck mechanic beginning in the 1950's.  <u>See,</u> First Amended Complaint, Count One, at ¶ 1.

In his First Amended Complaint, Perkins mistakenly contends that TMS International, incorrectly sued as the successor-in-interest to White Motor Corporation, has assumed the assets and liabilities of its predecessors, and is responsible for the liability of its predecessors.  <u>See,</u> First Amended Complaint, Count One, at ¶¶ 2(h) and 3.

As a matter of law, any alleged exposure cannot result in a judgment against defendant TMS International, incorrectly sued as the successor-in-interest to White Motor Corporation, for at least three reasons:

First, all of White Motor Corporation's product liabilities were discharged by the United States Bankruptcy Court for the Northern District of Ohio's November, 1983 confirmation of White Motor Corporation's Plan of Reorganization under Chapter 11 of the Bankruptcy Code.  The court order approving the Plan of Reorganization discharged all product liabilities, including asbestos-related liabilities, of White Motor Corporation arising before November 18, 1983.  None of the successors or alleged successors to White Motor Corporation, including TMS International, can succeed to any pre-November,

1983 product liabilities of White Motor Corporation because those liabilities were discharged under the 1983 Chapter 11 Plan of Reorganization.

Second, even if some alleged asbestos exposure were deemed to occur after the November 1983 bankruptcy discharge, despite plaintiff's failure to identify any potential exposure to White Motor Corporation products after 1983, any claims against TMS International for post-discharge exposure would also be barred under applicable law.   Federal courts reviewing the same Plan of Reorganization that is at issue here have concluded that suits arising from White Motor Corporation's products may not be asserted against its successors or alleged successors because the exclusive remedy for post-petition claims regarding White Motor Corporation products is set forth in the Plan of Reorganization.

Third, subsequent to the United States Bankruptcy Court for the Northern District of Ohio's November, 1983 confirmation of White Motor Corporation's Plan, none of the successors or purported successors to White Motor Corporation, including Northeast Ohio Axle Inc., NEOAX, Inc., Envirosource, Inc., Tube City IMS Corporation, or TMS International designed, manufactured, distributed or sold heavy trucks under any name.  Therefore, there is no factual basis for any claim arising from a TMS International product here.

As will be described in further detail below, there is no legal or factual basis upon which TMS International may be held liable for the injuries claimed by Perkins.  TMS International, individually and as the alleged successor to White Motor Corporation, is entitled to summary judgment as a matter of law.

## II. STATEMENT OF THE CASE:

### A. Procedural Background

Plaintiff Donald Perkins initially brought this action via Complaint dated March 16, 2015. TMS International was not a named Defendant in the original Complaint. Perkins thereafter filed a Motion to Cite Additional Parties, including TMS International, and amended his Complaint on April 18, 2016. The April 18, 2016 First Amended Complaint is the Operative Complaint. Thereafter, the case was timely removed to Federal Court based on diversity.

The operative First Amended Complaint alleges that TMS International is a successor-in-interest to White Motor Co. See, First Amended Complaint, Count One at ¶ 2(h). The First Amended Complaint further alleges that all defendants who are successor corporations have assumed the assets and liability of their predecessors, and they are responsible for the liabilities of the predecessors. Id., at ¶ 3.

Perkins claims injuries allegedly arising from his employment as a truck mechanic beginning in the 1950's, due to exposure to asbestos products or products containing, involving or requiring the use of asbestos. Id., at ¶¶ 1 and 5. Perkins claims that, along with numerous other defendants, TMS International was in the business of manufacturing, selling, or otherwise placing into the stream of commerce various products which contained, required, or incorporated asbestos for use, operation, or function, and that during his employment, he was exposed to asbestos, asbestos products, or products containing, involving or

requiring the use of asbestos manufactured by TMS International and otherwise placed into the stream of commerce by TMS International. Id., at ¶¶ 4-5.

The First Amended Complaint does not identify when or where Perkins was directly or indirectly exposed to alleged asbestos-containing products, nor does it identify any specific alleged asbestos-containing products to which he was exposed.

The First Amended Complaint alleges that TMS International's actions were wrongful under the Connecticut Products Liability Act, Connecticut General Statute § 52-572m, et seq. (hereinafter referred to as the "CPLA").

### B. Discovery Regarding Product Exposure

Perkins testified at deposition for three sessions during the course of this action, on February 14, 2016; April 27, 2016; and July 12, 2016. There is no mention whatsoever of TMS International in any of the deposition transcripts or documents produced by Perkins through discovery.

### C. White Motor Corporation Operations

White Motor Corporation was incorporated under the laws of the State of Ohio December 22, 1915. See, Trisha Mayhew certificate dated March 7, 1991 (attached hereto as **Ex. A**)(hereinafter referred to as "Mayhew Certificate") at ¶1.

### D. White Motor Corporation's Bankruptcy Reorganization

White Motor Corporation filed a voluntary petition under Chapter 11 of the Bankruptcy Code on September 4, 1980 in the United States Bankruptcy Court for the Northern District of Ohio. See, Mayhew Certificate (**Ex. A**) at ¶3.

Upon its filing of the Chapter 11 proceeding, White Motor Corporation's continued operations came under the supervision of the Bankruptcy Court.

During the course of the Chapter 11 proceeding, White Motor Corporation, with the Court's approval, disposed of substantially all of the manufacturing, sales and finance operations relating to its heavy-truck business and its farm-machinery business.  This divestment process included the sale, in June of 1981, of White Motor Corporation's U.S. assets, including its heavy truck manufacturing business, to Volvo White Truck Corporation, a subsidiary of A.B. Volvo (hereafter "Volvo").  See, Conway v. White Trucks, et al., 885 F. 2d 90, 91 (3rd Cir. 1989)(attached hereto as **Ex. B**).  The Bankruptcy Court for the Northern District of Ohio approved the sale of White Motor Corporation's truck manufacturing business to Volvo on August 20, 1981.  Id.  On August 20, 1981 the Court issued an Order approving the asset sale to Volvo.  See, August 20, 1981 Order (attached hereto as **Ex. C**).

Although Volvo initially declined responsibility for any product liability claims against White Motor Corporation[1], in a June 15, 1983 Product Liability Indemnification Agreement (hereinafter referred to as the "Volvo Indemnity") (attached hereto as **Ex. E**), Volvo later agreed to indemnify White Motor Corporation for certain product liabilities.  Specifically, Volvo North America

---

[1] The June 9, 1981 agreement between White Motor Corporation and AB Volvo (hereinafter referred to as the "Volvo Acquisition Agreement") provided, *inter alia*, that Volvo did not acquire liability for product liability claims against White Motor Corporation.  See, Agreement Between AB Volvo and White Motor Corporation, dated June 9, 1981 (attached hereto as **Ex. D**) at §2.02.  The Volvo Acquisition Agreement expressly provided that it could be modified "by a written document executed by AB Volvo and White Motor."  Id, at §17.08.

Corporation (hereinafter referred to as "VNA") an AB Volvo subsidiary, expressly agreed to:

> "pay on behalf of WMC [White Motor Corporation] all sums which WMC shall become legally obligated to pay as damages because of personal injury or property damage from accidents occurring during the period commencing May 1, 1983 and December 31, 1992 . . . and caused by a defect in the design, materials or workmanship of a WHITE or AUTOCAR heavy duty (Class 7 or Class 8) highway tractor or truck assembled in the United States by WMC's Truck Division any time prior to September 1, 1981." See, Volvo Indemnity (**Ex. E**) at p. 1.

The Product Liability Indemnification Agreement also placed an aggregate limit of $50 million upon VNA's indemnity obligation under the Volvo Indemnity, subject to certain annual caps. Id. The Volvo indemnity was approved by the Bankruptcy Court on June 29, 1983. Conway v. White Trucks, *et al*., 885 F. 2d 90, 91 (**Ex. B**).

Ultimately, a Plan for reorganizing the remnants of White Motor Corporation after the Volvo acquisition in 1981 was submitted to the Bankruptcy Court. See, Second Modified Plan of Reorganization dated September 2, 1983 in In re: White Motor Corp (the "Plan of Reorganization")(attached hereto as **Ex. F**).

Reorganization of White Motor Corporation pursuant to the Plan of Reorganization was approved by the Bankruptcy Court in a November 18, 1983 Order Confirming Second Modified Plan of Reorganization (hereinafter referred to as the "Confirmation Order")(attached hereto as **Ex. G**). The Confirmation Order discharged "any and all" remaining liabilities of White Motor Corporation as of November 18, 1983. Specifically, the Confirmation Order provided:

> "White Motor is discharged and released from any and all debts that arose before the date of confirmation of the Modified Plan and any and all debts of a kind specified in §502(g), (h) or (i) of the Bankruptcy Code, whether or not: (a) proof of claim based upon such debt is filed or deemed filed under §501 of the Bankruptcy Code; (ii) a claim based upon such debt is allowed under §502 of the Bankruptcy Code; or (iii) the holder of a claim based upon such debt has accepted the modified plan." See, Confirmation Order (**Ex. G**) at ¶D.

Pursuant to the confirmed Plan of Reorganization, White was permitted to: (a) retain certain operating assets and working capital relating exclusively to the manufacture of front axle assemblies for the heavy-truck industry (hereinafter referred to as the "Front Axle Business"); (b) continue the Front Axle Business by manufacturing and selling front-axle assemblies for the heavy-duty truck industry; and (c) conduct the Front Axle Business under the name Northeast Ohio Axle, Inc.  Plan of Reorganization (**Ex. F**), at Art. VII. p. 9.

Article X of the Plan of Reorganization established a Reserve Fund against potential post-confirmation claims relating to the Front Axle Business. Id., at p. 10.  The Plan of Reorganization also left in place certain general liability insurance policies that had been issued to White Motor Corporation.  See, In Re: White Motor Credit Corporation, et al., 37 B.R. 631, 641 (N.D.Ohio 1984) *aff'd* 761 F.2d 270 (6th Cir. 1985)(attached hereto as **Ex. H**).  The Reserve Fund and related insurance coverages were set aside as the exclusive remedy with respect to pre-petition or post-petition claims arising out of the Front Axle business.  Id. 37 B.R. at 643.

On April 29, 1986, Northeast Ohio Axle Inc. changed its name to NEOAX, Inc..  See Mayhew Certificate (**Ex. A**) at ¶5.  On June 2, 1987, NEOAX Inc., an

Ohio corporation, merged into NEOAX Inc., a Delaware corporation created to change the corporation's jurisdiction of incorporation from Ohio to Delaware.  Id. at ¶6.  On November 14, 1989, NEOAX, Inc. a Delaware corporation changed its name to EnviroSource, Inc.  Id. at ¶ 7.  That company ultimately was incorporated into Tube City IMS, Inc., a provider of on-site industrial steel-mill March  , 2017 (hereinafter referred to as "Connolly Affidavit")(attached hereto as **Ex. I**) at ¶ 7.  On January 7, 2016, Tube City changed its name to TMS International Corporation.  See, Certificate of Amendment of the Third Amended and Restated Certificate of Incorporation of Tube City IMS Corporation (attached hereto as **Ex. J**).

### III.   ARGUMENT

As a matter of law, TMS International may not be found  liable as a successor-in-interest to White Motor Corporation because: (a) White Motors Corporation's U.S. assets including its heavy truck business in 1981, were discharged by confirmation of the company's Chapter 11 reorganization Plan in 1983; (b) the White Motor Corporation reorganization Plan sets forth the exclusive remedy for post-confirmation claims against NEOAX (and, by extension, TMS International), and bars claims against the successors or purported successors to White Motor Corporation, including TMS International; and (c) none of the successors or purported successors to White Motor Corporation, including TMS International, manufactured heavy trucks, the products to which Perkins claims exposure, after the November 1983 confirmation of White Motor Corporation's Plan.

## A. Standard for Summary Judgment:

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See, Fed.R.Civ.P. 56(c). In moving for summary judgment against a party who will bear the burden of proof at trial, the movant's burden of establishing that there is no genuine issue of material fact in dispute will be satisfied if he or she can point to an absence of evidence to support an essential element of the non-moving party's claim. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ("The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."). In order to defeat summary judgment, the non-moving party must come forward with evidence that would be sufficient to support a jury verdict in his or her favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.").

When deciding a motion for summary judgment, "'the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587–588, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176

(1962)).  However, "[w]hen a motion for summary judgment is made and supported as provided in [the Federal Rules], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading."  See, Fed.R.Civ.P. 56(e).  Instead, the party opposing summary judgment must set forth the specific facts in affidavit or other permissible evidentiary form that demonstrate a genuine issue for trial. Id.

### B. Applicable Law

The sole legal ground asserted for plaintiff's claims against TMS International, the CPLA, governs a plaintiff's right to sue for damages allegedly caused by a defectively manufactured or designed product.  See, Connecticut General Statute § 52-572m, et seq.  The CPLA is a plaintiff's exclusive remedy for claims brought against product sellers (*i.e.,* product manufacturers, wholesalers, distributors, or retailers) for personal injuries or property damage caused by a defective product.  Lynn v. Haybuster Manufacturing MFG., Inc., 226 Conn. 282, 627 A.2d 1288 (1993).

In order to recover under the CPLA, a plaintiff must prove that:

(1) the defendant was engaged in the business of selling the product;

(2) the product was in a defective condition unreasonably dangerous to the consumer or user;

(3) the defect caused the injury for which compensation has been sought;

(4) the defect existed at the time of the sale; and

(5) the product was expected to and did reach the consumer without substantial change in its condition.

Giglio v. Connecticut Light and Power Co., 180 Conn. 230, 234 (1980); Zichichi v. Middlesex Memorial Hospital, 204 Conn. 399, 403 (1987).

Moreover, a plaintiff must, "plead and prove that the product was defective and the defect was the proximate cause of the plaintiff's injuries." Haesch v. Kissner, 229 Conn. 213, 218 (1994) (internal quotations and citations omitted).

Importantly, a plaintiff in a products liability case, "must plead and prove that the item which caused him harm was in fact the defendant's product within the meaning of the Act." Bobryk v. Lincoln Amusements, Inc., 15 Conn. L Rptr. 617, 619 (Conn. Super. Ct 1996) (Sheldon, J.) (internal quotations omitted)(attached hereto as **Ex. K**). Thus, a plaintiff "must allege facts which, if proved at trial, will establish that the thing which caused him harm was a thing which the defendant sold, leased or bailed to any person." Id.

Here, Perkins cannot meet the standards with regard to TMS International.

### C. **Pre-Confirmation Claims Arising From White Motor Corporation Products Were Discharged In Bankruptcy Under White Motor Corporation's Plan**

Any liability of White Motor Corporation arising out of pre-petition or pre-confirmation exposure to a White Motor Corporation product,[2] would have been discharged upon the United States Bankruptcy Court for the Northern District of Ohio's November 18, 1983 confirmation of White Motor Corporation's Reorganization Plan.

---

[2] A claim asserted against White Motor Corporation in bankruptcy would be deemed to arise as of the date of alleged exposure, not injury manifestation. See, e.g. Grady v. A.H. Robins Co., 839 F. 2d 198, 203 (4th Cir. 1986) cert dismissed 487 U.S. 1260, 109 S.Ct. 201, 101 L.Ed 972 (1988) (liability for injuries allegedly caused by Dalkon Shield arose as a "claim" when the device was inserted into claimant, even though injury manifested itself later); In re: Grossman's, Inc. , 607 F. 3rd 114, 122 (3rd Cir. 2010), Epstein v. Comm'n of Unsecured Creditors, 58 F.3d 1573, 1578 (11th Cir., 1995), In re: Parker, 313 F.3rd 1267, 1269 (10th Cir., 2002), Matter of Wheeler, 137 F.3rd 299, 300 (5th Cir., 1988); In re: Chateaugay Corporation, 2009 WL 3674908 (Bankr. S.D.N.Y. 1986).

Pursuant to the United States Bankruptcy Court for the Northern District of Ohio's November 18, 1983 Confirmation Order approving the Plan of Reorganization, White Motor Corporation was discharged from all debts arising prior to that date. As noted above, that Order states, in pertinent part:

> "White Motor is discharged and released from any and all debts that arose before the date of confirmation of the Modified Plan and any and all debts of a kind specified in §502(g), (h) or (i) of the Bankruptcy Code, whether or not: (a) proof of claim based upon such debt is filed or deemed filed under §501 of the Bankruptcy Code; (ii) a claim based upon such debt is allowed under §502 of the Bankruptcy Code; or (iii) the holder of a claim based upon such debt has accepted the modified plan." Confirmation Order (**Ex. G**) at ¶D.

"Debt" includes "liability on a claim." See, 11 U.S.C. §101(12).

In turn, "claim" is defined as a:

> "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." See, 11 U.S.C. §101(50)(A).

Where a party, prior to plan confirmation, has been exposed to asbestos made, sold or used by the debtor but has not yet manifested injury, that party is deemed to hold a "right to payment" against the debtor that is "contingent," "unmatured" and "unliquidated" and subject to discharge under the order confirming the plan. See e.g. In re: Chateaugay Corp., 2009 WL 367490, 51 Bankr.Ct. Dec. 16 (Bankr. S.D.N.Y.2009).

Any claim based upon exposure to a White Motor Corporation product prior to November 18, 1983 would constitute a pre-confirmation claim that was "contingent," "unmatured" and "unliquidated."

Plaintiff received constructive notice of the United States Bankruptcy Court for the Northern District of Ohio's November 18, 1983 discharge, which is sufficient to satisfy any due process concerns.  Due process requires that claimants "unknown" at the time of the bankruptcy discharge be provided constructive notice of the discharge.  In re: Enron Corp., 2006 WL 898031 at *4 (Bank. S.D.N.Y 2006).  The requirement to provide constructive notice of a bankruptcy discharge may be satisfied by publication in a national newspaper. City of New York v. N.Y., N.H. and H.R.Co., 344 U.S. 293, 73 S. Ct. 299, 97 L.Ed. 333 (1953).  In the White Motor Corporation bankruptcy, the U.S. Bankruptcy Court for the Northern District of Ohio ordered the publication, on or before October 21, 1983, in the *Wall Street Journal* (national edition) and the *New York Times* of a notice to creditors advising of the upcoming Plan confirmation hearing.  See, Order Approving Disclosure Statement, dated Sept. 2, 1983 (attached hereto as **Ex. L**) at pg. 3.  Issuance of the required public notices is a matter of record, as the Confirmation Order states that it is based "upon the affidavits of service and publication filed herein reflecting substantial compliance with the notice requirements of the Order."  See, Confirmation Order (**Ex. G**) at p.1.

Thus, pre-confirmation claims, if any, against White Motor Corporation would have been discharged by the United States Bankruptcy Court for the Northern District of Ohio's November 18, 1983 Confirmation Order approving White Motor Corporation's Plan of Reorganization.

Because any pre-confirmation claims arising from White Motor Corporation products were discharged by United States Bankruptcy Court for the Northern District of Ohio's November 18, 1983 Confirmation Order approving White Motor Corporation's Plan of Reorganization, then as a matter of law, TMS International, which is incorrectly sued here as the alleged "successor-in-interest to White Motor Corporation," also cannot be liable for any pre-confirmation claims arising from White Motor Corporation's products.

D. **Post-Confirmation Claims Are Prohibited Against TMS International In View Of The Reserve Fund Established Under The Confirmed White Motor Corporation Plan**

Even if some alleged asbestos exposure were deemed to occur after the United States Bankruptcy Court for the Northern District of Ohio's November 18, 1983 Confirmation Order approving White Motor Corporation's Plan of Reorganization, any claims against the successors or alleged successors in interest to White Motor Corporation, including Northeast Ohio Axle Inc., NEOAX, Inc., EnviroSource, Inc., Tube City IMS Inc., or TMS International, for post-confirmation exposure to White Motor Corporation's products would in any event be barred under applicable law.

The Amended Complaint contains no timeframe for Perkins alleged exposure to asbestos products.  In his deposition, Perkins did not identify any exposure to White Motor Corporation products after November 18, 1983.  Absent actual admissible evidence of exposure after the United States Bankruptcy Court for the Northern District of Ohio's November 18, 1983 Confirmation Order approving White Motor Corporation's Plan of Reorganization, any allegation of

post-confirmation exposure would be necessarily based upon speculation and conjecture.

If Post – November, 1983 exposure to asbestos-containing products had been alleged and supported with admissible evidence here, which it is not, such an allegation would nonetheless fail as a matter of law to state an actionable claim against TMS International. As Federal Courts at the District Court and Court of Appeals level have found, pursuant to the Plan of Reorganization, pre-confirmation and post-confirmation claims may not be asserted against NEOAX, Inc. or its successors under Bankruptcy Code §1141.

For example, after review of exactly the same Plan of Reorganization that has been placed at issue here, the U.S. District Court for the Northern District of Ohio concluded that NEOAX, Inc. is shielded from suits for claimed post-confirmation exposure to White Motor Corporation products. The Court explained:

> The Plan sets aside the insurance policies and the Reserve Fund from the moneys deemed essential for the start-up of the new, reorganized entity fashioned from White's remnants, Northeast Ohio Axle, Inc. ("NEOAX"). **This Court's interpretation of [Bankruptcy Code] §1141 does not allow claimants to sue NEOAX** and in no way interferes with the [Bankruptcy] Code's policy to provide NEOAX with "a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of existing debt." In re: White Motor Credit Corp., *supra*, 37 B.R. at 643 (emphasis added)(**Ex. H**) *citing* Local Loan Co. v. Hunt, 292 U.S. 234, 244, 54 S. Ct. 695, 699, 78 L.Ed. 1230 (1934).

Indeed, the District Court confirmed that NEOAX, Inc. would be insulated even from *non-dischargeable* claims, stating that: "the reorganized entity

[NEOAX, Inc.] is insulated from being pursued by creditors who formally asserted non-dischargeable claims." Id. Thus, the District Court in In Re White Motor Credit concluded that, because the Reserve Fund and insurance set aside pursuant to the Plan are the exclusive avenue for claims arising from White Motor Corporation's products, "[n]o party may seek to execute any judgment against White by commencing any action against NEOAX." Id. 37 B.R.at 646.

This District Court decision in In re: White Motor Credit was affirmed on appeal. The U.S. Court of Appeals for the Sixth Circuit re-emphasized on appeal that all claims against NEOAX that had not been filed in the White Motor Corporation bankruptcy would be barred, regardless of whether those claims were pre-petition or post-petition claims. The Sixth Circuit explained:

> "We agree with White that this [allowing post-petition claims to proceed against NEOAX despite failure to file those claims in the bankruptcy] is error. **All pre-petition claims and post-petition claims against White which have not been filed with the Bankruptcy Court are barred by the statute and the orders of the lower courts.**" In re: White Motor Credit, 761 F.2d 270, 274-275 (6th Cir. 1985) (emphasis added)(attached hereto as **Ex. M**).

More than three decades ago, the Sixth Circuit Court of Appeals upheld the same reorganization Plan against virtually identical post-confirmation product liability claims as have been asserted here, holding that such claims could not proceed against NEOAX, Inc. Nothing has changed in the intervening years, except that Perkins' claims here are first advanced decades, not months, after the Plan's confirmation. The Sixth Circuit's In re: White Motor Credit holding is still good law, on point, and neither diminished nor voided in the ensuing years. In light of this overwhelming authority precisely on point, there is no legal basis

upon which White Motor Corporation's alleged successors, including TMS International, could be subjected to liability here.

Thus, as a matter of law, plaintiffs may not pursue claims arising from White Motor Corporation's products, against TMS International as its alleged successor, regardless of whether those claims arose before or after the 1983 Plan confirmation.

### E. **None of White Motor Corporation's Alleged Successors, Including TMS International, Designed, Manufactured, Distributed or Sold any Heavy Trucks Post-Discharge**

Finally, there is no basis for any claim against TMS International "individually" under the CPLA (*i.e.:* directly rather than as an alleged successor to White Motor Corporation), because there is no evidence in the record that plaintiff Perkins was exposed to any product designed, manufactured, distributed or sold by TMS International

There is no evidence that any of the successors or alleged successors to White Motor Corporation, including TMS International, manufactured or distributed any of the products upon which plaintiffs' claim against TMS International is based.   Absent proof that "the thing which caused him harm was a thing which the defendant sold, leased or bailed to any person," plaintiff's product liability claim against TMS International must fail.  See, Bobryck v. Lincoln Amusements, Inc., *supra,* 15 Conn. L. Rprt at 619 (**Ex. K**).

## IV. CONCLUSION

For all the foregoing reasons, TMS International respectfully requests that this Court grant summary judgment with respect to the plaintiff's First Amended Complaint, any Cross-Claims by any co-defendants directed to it, and any Intervening Complaints by any Intervening Plaintiffs directed to it.

Dated: Hartford, Connecticut
March 10, 2017

Respectfully submitted,
Defendant: TMS International Corporation, f/k/a Tube City IMS Corporation, incorrectly sued as the successor-in-interest to White Motor Corporation

  /S/ Christopher J. Lynch
Christopher J. Lynch, Esq.
Federal Bar No. ct07308
LeClairRyan, A Professional Corp.
Attorneys for Defendants
One Financial Plaza
755 Main Street, Suite 2000
Hartford, Connecticut 06103
(860) 656-1935 Direct
(860) 656-1985 Fax
Christopher.Lynch@leclairryan.com

## **CERTIFICATION**

      I hereby certify that on March 10, 2017, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                                /S/Christopher J. Lynch
                                                Christopher J. Lynch ct07308