UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DONALD PERKINS | | CIVIL ACTION NO. |
| | Plaintiff, | 3:16-cv-00738 (JAM) |
| v. | | |
| BORGWARNER MORSE TEC, INC., AS A SUCCESSOR IN INTEREST TO BORG WARNER CORPORATION, ET AL | | |
| | Defendants. | MARCH 10, 2017 |

## DEFENDANT'S LOCAL RULE 56(a)1 STATEMENT

Pursuant to D. Conn. L. Civ. R. 56(a)1, the defendant, TMS International Corporation f/k/a Tube City IMS Corporation incorrectly sued as the successor-in-interest to White Motor Corporation (hereinafter, "TMS International"), hereby submits this statement in support of its Motion for Summary Judgment dated March 10, 2017.

1. The plaintiff, Donald Perkins, has alleged that he was injured as a result of his employment as a truck mechanic beginning in the 1950's, due to exposure to asbestos products or products containing, involving or requiring the use of asbestos. See, First Amended Complaint, at ¶¶ 1 and 5.

2. Perkins claims that, along with numerous other defendants, TMS International was in the business of manufacturing, selling, or otherwise placing into the stream of commerce various products which contained, required, or incorporated asbestos for use, operation, or function, and that during his employment, he was exposed to asbestos, asbestos products, or products containing, involving or requiring the use of asbestos manufactured by, along with numerous other defendants, TMS International and otherwise placed into the stream of commerce by, along with

numerous other defendants, TMS International. See, First Amended Complaint, at ¶¶ 4-5.

2. Perkins did not provide any testimony at his deposition identifying any asbestos-containing product manufactured by TMS International. Perkins has not produced any product identification evidence, in the form of documents or witness testimony, to support his claim that he was exposed to any products manufactured by TMS International.

3. Perkins alleges that TMS International is the successor-in-interest to White Motor Co. See, First Amended Complaint, Count One at ¶ 2(h). Perkins further alleges that all defendants who are successor corporations have assumed the assets and liability of their predecessors, and they are responsible for the liabilities of the predecessors. See, First Amended Complaint, at ¶ 3.

4. White Motor Corporation was incorporated under the laws of Ohio December 22, 1915. See, Trisha Mayhew certificate dated March 7, 1991 (hereinafter referred to as "Mayhew Certificate")(attached to TMS International's Memorandum of Law in Support of Motion for Summary Judgment as **Ex. A**) at ¶1.

5. White Motor Corporation filed a voluntary petition under Chapter 11 of the Bankruptcy Code on September 4, 1980 in the United States Bankruptcy Court for the Northern District of Ohio. See, Mayhew Certificate, at ¶3. Upon its filing of the Chapter 11 proceeding, White Motor Corporation's continued operation came under the supervision of the Bankruptcy Court.

6. During the course of the White Motor Corporation Chapter 11 proceeding, White Motor Corporation, with the Court's approval, disposed of

substantially all of the manufacturing, sales and finance operations relating to its heavy-truck business and its farm-machinery business.  This divestment process included the sale, in June of 1981, of White Motor Corporation's U.S. assets, including its heavy truck manufacturing business, to Volvo White Truck Corporation, a subsidiary of A.B. Volvo (hereafter "Volvo").  See, Conway v. White Trucks, et al., 885 F. 2d 90, 91 (3rd Cir. 1989)(attached to TMS International's Memorandum of Law in Support of Motion for Summary Judgment as **Ex. B**).  The Bankruptcy Court for the Northern District of Ohio approved the sale of White Motor Corporation's truck manufacturing business to Volvo on August 20, 1981.  Id.

7.  On August 20, 1981 the Court issued an Order approving the asset sale to Volvo.  See, August 20, 1981 Order (attached to TMS International's Memorandum of Law in Support of Motion for Summary Judgment as **Ex. C**).

8.  The June 9, 1981 agreement between White Motor Corporation and AB Volvo (hereinafter referred to as the "Volvo Acquisition Agreement") provided, inter alia, that Volvo did not acquire liability for product liability claims against White Motor Corporation.  See, Agreement Between AB Volvo and White Motor Corporation, dated June 9, 1981 (attached to TMS International's Memorandum of Law in Support of Motion for Summary Judgment as **Ex. D**) at §2.02.  The Volvo Acquisition Agreement expressly provided that it could be modified "by a written document executed by AB Volvo and White Motor."  Id., at §17.08.

9.  Although Volvo initially declined responsibility for any product liability claims against White Motor Corporation, in a June 15, 1983 Product Liability Indemnification Agreement (hereinafter referred to as the "Volvo Indemnity") (attached

to Memorandum of Law in Support of Motion for Summary Judgment as **Ex. E**), Volvo later agreed to indemnify White Motor Corporation for certain product liabilities. Specifically, Volvo North America Corporation (hereinafter referred to as "VNA") an AB Volvo subsidiary, expressly agreed to:

> "pay on behalf of WMC [White Motor Corporation] all sums which WMC shall become legally obligated to pay as damages because of personal injury or property damage from accidents occurring during the period commencing May 1, 1983 and December 31, 1992 . . . and caused by a defect in the design, materials or workmanship of a WHITE or AUTOCAR heavy duty (Class 7 or Class 8) highway tractor or truck assembled in the United States by WMC's Truck Division any time prior to September 1, 1981." See, Volvo Indemnity, at p. 1.

10. The Product Liability Indemnification Agreement also placed an aggregate limit of $50 million upon VNA's indemnity obligation under the Volvo Indemnity, subject to certain annual caps. See, Volvo Indemnity, at p. 1.

11. The Volvo indemnity was approved by the Bankruptcy Court on June 29, 1983. Conway v. White Trucks, et al., 885 F. 2d 90, 91.

12. Ultimately, a Plan for reorganizing the remnants of White Motor Corporation after the Volvo acquisition in 1981 was submitted to the Bankruptcy Court. See, Second Modified Plan of Reorganization dated September 2, 1983 in In re: White Motor Corp (the "Plan of Reorganization")(attached to TMS International's Memorandum of Law in Support of Motion for Summary Judgment as **Ex. F**).

13. Reorganization of White Motor Corporation pursuant to the Plan of Reorganization was approved by the Bankruptcy Court in a November 18, 1983 Order Confirming Second Modified Plan of Reorganization (hereinafter referred to as the

"Confirmation Order")( attached to TMS International's Memorandum of Law in Support of Motion for Summary Judgment as **Ex. G**).

14. The Confirmation Order discharged "any and all" remaining liabilities of White Motor Corporation as of November 18, 1983.  Specifically, the Confirmation Order provided:

> "White Motor is discharged and released from any and all debts that arose before the date of confirmation of the Modified Plan and any and all debts of a kind specified in §502(g), (h) or (i) of the Bankruptcy Code, whether or not: (a) proof of claim based upon such debt is filed or deemed filed under §501 of the Bankruptcy Code; (ii) a claim based upon such debt is allowed under §502 of the Bankruptcy Code; or (iii) the holder of a claim based upon such debt has accepted the modified plan."  See, Confirmation Order, at ¶D.

15. Pursuant to the confirmed Plan of Reorganization, White was permitted to: (a) retain certain operating assets and working capital relating exclusively to the manufacture of front axle assemblies for the heavy-truck industry (hereinafter referred to as the "Front Axle Business"); (b) continue the Front Axle Business by manufacturing and selling front-axle assemblies for the heavy-duty truck industry; and (c) conduct the Front Axle Business under the name Northeast Ohio Axle, Inc.  See, Plan of Reorganization, at Art. VII. p. 9.

16. Article X of the Plan of Reorganization established a Reserve Fund against potential post-confirmation claims relating to the Front Axle Business.  See, Plan of Reorganization, at p. 10.

17. The Plan of Reorganization also left in place certain general liability insurance policies that had been issued to White Motor Corporation.  See, In Re: White Motor Credit Corporation, et al., 37 B.R. 631, 641 (N.D.Ohio 1984) aff'd 761 F.2d 270 (6th Cir. 1985)( attached to TMS International's Memorandum of Law in Support of

Motion for Summary Judgment as **Ex. H**).  The Reserve Fund and related insurance coverages were set aside as the exclusive remedy with respect to pre-petition or post-petition claims arising out of the Front Axle business.  Id. 37 B.R. at 643.

18. On April 29, 1986, Northeast Ohio Axle Inc. changed its name to NEOAX, Inc..  See, Mayhew Certificate, at ¶5.  On June 2, 1987, NEOAX Inc., an Ohio corporation, merged into NEOAX Inc., a Delaware corporation created to change the corporation's jurisdiction of incorporation from Ohio to Delaware.  Id. at ¶6.  On November 14, 1989, NEOAX, Inc. a Delaware corporation changed its name to EnviroSource, Inc.  Id. at ¶ 7.  That company ultimately was incorporated into Tube City IMS, Inc., a provider of on-site industrial steel-mill services for the steelmaking industry.  See, Affidavit of Michael Connolly, dated March   , 2017(hereinafter referred to as "Connolly Affidavit")( attached to TMS International's Memorandum of Law in Support of Motion for Summary Judgment as **Ex. I**) at ¶ 7.

19. On January 7, 2016, Tube City changed its name to TMS International Corporation.  See, Certificate of Amendment of the Third Amended and Restated Certificate of Incorporation of Tube City IMS Corporation (attached to TMS International's Memorandum of Law in Support of Motion for Summary Judgment as **Ex. J**).

20. TMS International is a provider of on-site industrial steel-mill services for steel-making.  Services provided by TMS International include raw material brokerage, scrap management, scrap optimization, slag handling and metal recovery, among others.  Connolly Affidavit, at ¶ 7.

| | |
|---|---|
| Dated: Hartford, Connecticut<br>March 10, 2017 | Respectfully submitted,<br>Defendant: TMS International Corporation, f/k/a Tube City IMS Corporation, incorrectly sued as the successor-in-interest to White Motor Corporation<br><br>  /S/ Christopher J. Lynch<br>Christopher J. Lynch, Esq.<br>Federal Bar No. ct07308<br>LeClairRyan, A Professional Corp.<br>Attorneys for Defendants<br>One Financial Plaza<br>755 Main Street, Suite 2000<br>Hartford, Connecticut 06103<br>(860) 656-1935 Direct<br>(860) 656-1985 Fax<br>Christopher.Lynch@leclairryan.com |

**CERTIFICATION**

    I hereby certify that on March 10, 2017, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                                      /S/Christopher J. Lynch
                                                      Christopher J. Lynch ct07308